# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| Wilder Reed<br>1701 Severn Tree Ct.<br>Severn, MD 21144<br><br>    Plaintiff,<br><br>v.<br><br>Washington Gas Light Company<br>6801 Industrial Road<br>Springfield, VA 22151<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Wilder Reed, by way of his attorney, Morris E. Fischer, Esq., alleges as follows against Defendant, Washington Gas Light Company, on information and belief formed after reasonable inquiry under the circumstances:

### PARTIES

1. Plaintiff, Wilder Reed, is an individual residing in Severn, MD.

2. Defendant, Washington Gas Light Company, is a Virginia corporation with its principal place of business located at 6801 Industrial Road, Springfield, VA 22151.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII) and and 42 U.S.C. § 2000(e) *et seq.*

## FACTS

4. Plaintiff, Wilder Reed ("Reed"), was employed by Defendant, Washington Gas Light Company ("Company" or "Washington Gas"), for almost seven (7) years, most recently as a Gas Controller II.

5. Reed began employment with Washington Gas in the fall of 2002.

6. During Reed's employment with Washington Gas, he received no complaints or negative performance reviews.

7. Reed is an African-American.

8. In December 2008, Reed was given an excellent performance review and told to expect a promotion in January.

9. Reed was commended for good communication skills and the ability to get along well with co-workers.

10. In January 2009, Reed was promoted to Gas Controller II and received a raise of approximately 10 percent.

11. Reed had previously held the title of Gas Controller I for approximately 3 years.

12. Upon information and belief, Reed's Caucasian co-workers were promoted to Gas Controller II more quickly than their African-American counterparts, including Reed. Caucasians were promoted 6 months to a year sooner than African-Americans, despite sometimes having less experience.

13. Reed also noticed that those who made racist remarks against African-Americans were not reprimanded.

14. Harry Jones ("Jones"), a Caucasian co-worker, made several racist remarks including: "I don't know how all you black people can wear your hair that way," and "If you

take Tony and Lesley Williams and shake them up in a bag, what do you get? Two black people." Neither Tony nor Lesley is African-American, however, Tony had a reputation for speaking and acting in a manner normally associated with African-Americans and therefore the derogatory remark was a cultural reference aimed at African-Americans.

15. Lesley Williams later told Danny Greene ("Greene"), Reed's supervisor, that she was going to berate Jones for the racial comment involving her. Greene told her that he would take care of Jones, but nothing was done.

16. Several Caucasian co-workers would endlessly provoke African-American co-workers. They would put garbage in the mailbox of an African-American or set up other ways to get him into trouble.

17. Greene knew about the racist actions which took place, yet he did not attempt to stop it.

18. In January 2009, the same month as Reed's promotion, Jones decided to return to work after having tentatively retired.

19. Reed's supervisor, Danny Greene, became very agitated at work and complained that "we are over budget," because Jones had decided not to retire.

20. On the weekend of February 6, 2009, Reed worked 12 hours per day, 4 days in a row, along with co-worker, Tony Herbert.

21. On February 9, 2009, Reed was called into the office by Greene. HR personnel and two of Greene's bosses were also present. They accused Reed of having left work for a few hours while on the job.

22. Reed's supervisors claimed that Reed was caught on camera picking up his coat, and furthermore, that Reed was not visible on camera for a few hours.

23. Reed responded that everyone knows how cold it is in the work area, and that is why he needed a coat. Reed also asked them to check the front door camera, and they would see that he didn't go anywhere.

24. In Reed's experience, it was common for workers not to be visible in the camera's line of sight for long periods of time. Reed was also told at one point that the camera's were there to monitor the system and not the workers.

25. On February 13, 2009, for the reasons described in paragraph 21 above, Washington Gas terminated Reed.

26. Tony Herbert, Reed's co-worker during the camera incident, is Caucasian.

27. Upon information and belief, Tony Herbert was not visible by the camera for a comparable amount of time, yet he was not disciplined as Reed was.

28. Reed was also aware that Harry Jones used to take naps while on the job, sleeping for several hours in front of the camera, with no repercussions.

29. Reed subsequently applied to the Maryland Department of Labor for unemployment benefits. The Department of Labor determined that the circumstances surrounding Plaintiff's termination do not warrant a disqualification under Section 8-1002 or 8-1003 of the Maryland Unemployment Insurance Law.

30. On July 30, 2009, the Equal Employment Opportunity Commission ("EEOC") issued Reed a letter granting him the right to sue. (Please see Exhibit A, attached)

31. Reed has lost past, present, and future wages and benefits as a result of his termination.

32. Washington Gas willfully and maliciously discriminated against Reed and terminated him on the basis of his race.

## COUNT I
### Discrimination Based on Race in Violation of Title VII of the Civil Rights Act of 1964

Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein and states:

33. Plaintiff is and at all times relevant hereto was an African-American.

34. Defendant intentionally discriminated against African-Americans with respect to promotions and disciplinary actions.

35. Defendant's discriminatory actions against Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

36. Plaintiff's termination was an adverse and tangible employment action taken against Plaintiff because of his race.

37. Race was a motivating factor in Plaintiff's termination.

38. Race was the motivating factor in Plaintiff's termination.

39. Other similarly situated employees not of Plaintiff's race were not subject to the same conditions as Plaintiff.

40. A causal connection exists between Defendant's actions in terminating Plaintiff and Plaintiff's race.

41. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) *et seq.*

42. Defendant's actions caused Plaintiff monetary damages.

43. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem and other damages.

## COUNT II
### Discrimination in Violation of 42 USC § 1981

Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein and states:

44. Plaintiff is and at all times relevant hereto was an African-American.

45. Defendant intentionally discriminated against African-Americans with respect to promotions and disciplinary actions.

46. Defendant's discriminatory actions against Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

47. Plaintiff's termination was an adverse and tangible employment action taken against Plaintiff because of his race.

48. Race was a motivating factor in Plaintiff's termination.

49. Race was the motivating factor in Plaintiff's termination.

50. Other similarly situated employees not of Plaintiff's race were not subject to the same conditions as Plaintiff.

51. A causal connection exists between Defendant's actions in terminating Plaintiff and Plaintiff's race.

52. Defendant's actions constituted a violation of 42 USC § 1981.

53. Defendant's actions caused Plaintiff monetary damages.

54. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem and other damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

A. A declaratory judgment that the conduct engaged by Defendant was in violation of Plaintiff's legal rights;

B. An injunction enjoining Defendant from engaging in such conduct in the future;

C. An order directing Defendant to pay an award of back pay and benefits to the Plaintiff;

D. An order directing Defendant to pay an award of statutory compensation (pecuniary and non-pecuniary) of $1,000,000.00 and punitive damages of $1,000,000.00;

E. An order directing Defendants to pay reasonable attorney's fees and costs of litigation; and

F. Such other relief as the Court may deem just and proper.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
MD Bar No. 26286
Air Rights Center
4550 Montgomery Avenue
Suite 601N
Bethesda, MD 20814
(301) 469-3498 phone
(301) 469-3499 fax
*Attorney for the Plaintiff*

## JURY DEMANDED

Plaintiff, through counsel, requests a trial by jury on all of the above claims.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
MD Bar No. 26286
Air Rights Center
4550 Montgomery Avenue
Suite 601N
Bethesda, MD 20814
(301) 469-3498 phone
(301) 469-3499 fax
*Attorney for the Plaintiff*